USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/5/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
DWAYNE MINTO,                                                 :
                                    Petitioner,               :
                                                              :  14 Civ. 07764 (LGS) (KNF)
               -against-                                      :
                                                              :  **OPINION & ORDER**
                                                              :
KENNETH DECKER, et al.,                                       :
                                    Respondents.              :
                                                              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Before the Court is the Report and Recommendation of Magistrate Judge Kevin Nathaniel Fox ("Report"), recommending that (1) Petitioner's Petition for a Writ of Habeas Corpus be granted, (2) Respondents be directed to provide an individualized bond hearing to Petitioner within seven days of the date of this Opinion and Order to determine whether his continued detention is justified and (3) Petitioner's request for costs and attorneys' fees be denied. Both parties filed timely objections to the Report. For the reasons stated below, the Report is adopted in part and rejected in part. Petitioner's requests for a Writ of Habeas Corpus and an individualized bond hearing are granted.

**I.     BACKGROUND**

The facts and procedural history relevant to the motions are set out in the Report and summarized here.

### A.     Relevant Factual and Procedural History

Petitioner -- a citizen of Jamaica -- entered the United States on a B-2 visa in 1985 when he was approximately three years old.  He was arrested in Connecticut on three separate occasions in 2004.  After the first arrest, he pleaded guilty to possession of a controlled substance.  Following the second arrest, he pleaded guilty to third-degree assault.  After the third arrest, he pleaded guilty to possession of a controlled substance.  After each guilty plea, he was principally sentenced to a one-year term of imprisonment, execution suspended.

On March 28, 2014, approximately 10 years after his most recent arrest and having never served a custodial sentence, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") and detained at the county jail in Goshen, New York.  On the same day, Petitioner was issued a Notice to Appear, charging that Petitioner is subject to removal because of his prior criminal convictions and because his presence in the United States is "without admission or parole," under sections 212(a)(2)(A)(i)(I)-(II), 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.  On March 28, 2014, the U.S. Department of Homeland Security ("DHS") issued a Notice of Custody Determination, stating that DHS would continue to detain him until a final administrative determination of his removal is reached.  An immigration judge denied Petitioner's request for a change in custody status on April 29, 2014.

### B.     The Report and the Parties' Objections

Petitioner seeks a Writ of Habeas Corpus, alleging that he is being unlawfully detained by Respondents.  The Report -- issued on March 26, 2015 -- reaches three primary conclusions.  First, the Report accepts Respondents' argument that Petitioner is subject to mandatory detention without a bond hearing under section 236(c) of the INA, 8 U.S.C. § 1226(c) (referred to hereafter

as "section 236(c)"), deferring to a Board of Immigration Appeals ("BIA") decision interpreting section 236(c)(1). Second, the Report agrees with Petitioner that his detention violates his Fifth Amendment right to due process. Third, the Report rejects Petitioner's request for an award of costs and attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 et seq. The Report recommends a prompt individualized bond hearing to determine if Petitioner should continue to be detained.

By letter dated April 16, 2015, Petitioner timely objected to the Report's conclusion that he is subject to mandatory detention. Petitioner contends that the Report errs in its deference to the BIA interpretation of section 236(c)(1). In particular, Petitioner argues that the Report contains insufficient analysis of section 236(c)(1)'s claimed ambiguity and asks the Court to "conduct its own analysis[,] utilizing the traditional tools of statutory interpretation." Petitioner does not object to the Report's denial of his costs and attorneys' fees.

By letter dated April 16, 2015, Respondents also timely objected to the Report, specifically, the finding that Petitioner's detention violates his right to due process. First, Respondents assert that the length of Petitioner's detention cannot establish a due process violation on its own "without any fact-specific consideration of the removal proceedings giving rise to his detention. . . ." Second, Respondents contend that, as Petitioner "has been charged as removable for having been convicted of offenses enumerated" in section 236(c), section 236(c) authorizes his continued detention without bond and without any individualized showing of flight risk or dangerousness.

**II.   LEGAL STANDARD**

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court

"may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 72(b), *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

The court must undertake a de novo review of any portion of the report to which a specific objection is made on issues raised before the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Even when exercising de novo review, "[t]he district court need not . . . specifically articulate its reasons for rejecting a party's objections . . . ." *LaBarbera v. D. & R. Materials Inc.*, 588 F. Supp. 2d 342, 344 (E.D.N.Y. 2008) (quoting *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006)). When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report strictly for clear error. *Crowell v. Astrue*, No. 08 Civ. 8019, 2011 WL 4863537, at *2 (S.D.N.Y. Oct. 12, 2011) (citation omitted). Finally, "an unsuccessful party is not entitled as of right to a de novo review by the judge of an argument never seasonably raised before the magistrate." *Marache v. Akzo Nobel Coatings, Inc.*, No. 08 Civ. 11049, 2010 WL 3731124, at *3 (S.D.N.Y. Sept. 7, 2010) (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co*., 840 F.2d 985, 990-91 (1st Cir. 1988)); *accord Walker v. Stinson*, 205 F.3d 1327, 2000 WL 232295, at *2 (2d Cir. 2000) (summary order) ("district court did not abuse its discretion in refusing to consider" an argument where the objector failed to raise it before the magistrate judge).

### III. DISCUSSION

#### A. Mandatory Detention Under Section 236(c) of the INA

Petitioner contends that he is not subject to mandatory detention without the possibility of bail for the duration of his removal proceedings because he was not detained by immigration officials "when . . . released" from criminal custody, as required by section 236(c) of the INA. The Report disagrees, finding that the language of section 236(c) is ambiguous, and defers to the BIA's interpretation of the statute. Petitioner objects to the Report's section 236 analysis. For the following reasons, this portion of the Report is rejected.

Section 236(c) provides:

> The Attorney General shall take into custody any alien [who has been convicted of an enumerated offense] *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c) (emphasis added). The interpretation of the words "when" and "released" has generated much litigation in this District. Like petitioners in previous cases, Petitioner here "argues that the word 'when' requires that mandatory detention should begin at or around the time of release from criminal confinement." *Martinez-Done v. McConnell*, No. 14 Civ. 3071, 2014 WL 5032438, at *2 (S.D.N.Y. Oct. 8, 2014). He further "argues that an alien is only 'released' for purposes of section 236(c) if he serves -- and is released from -- a custodial sentence." *Id.* at *3. With this interpretation, section 236(c) would not apply to Petitioner because his last sentence was imposed approximately 10 years ago, and he has never served a custodial sentence.

Respondents, as they have in previous cases, "argue[] that 'when' does not 'set a deadline' for the onset of mandatory detention. . . . but 'creates a precondition for the [DHS] to

exercise its mandatory detention authority,' and that such authority, once triggered, extends indefinitely through time." *Id.* at *2 (alteration omitted). Respondents further argue that "the word 'release' refers not only to release from physical custody following a sentence, but also to release from 'physical custody following *arrest*.'" *Id.* at *3.

The Second Circuit has yet to address this issue, although it may do so in the pending appeals in *Lora v. Shanahan* (U.S.C.A. Dkt. No. 14-2343) and *Araujo-Cortes v. Shanahan* (U.S.C.A. Dkt. No. 14-3719). Decisions in this District have been split on their interpretation of section 236. Nine Judges have adopted Petitioner's interpretation of the word "when," *see Martinez-Done*, 2014 WL 5032438, at *3 n.25 (collecting cases and adopting Petitioner's interpretation); *see also Cruz v. Shanahan*, No. 14 Civ. 9736, 2015 WL 409225 (S.D.N.Y. Jan. 30, 2015) (Judge Caproni); *Rodriguez v. Shanahan*, No. 14 Civ. 9838, 2015 WL 405633 (S.D.N.Y. Jan. 30, 2015) (Judge Netburn); *Figueroa v. Aviles*, No. 14 Civ. 9360, 2015 WL 464168 (S.D.N.Y. Jan. 29, 2015) (Judge Torres), and eight Judges have adopted Respondents' interpretation, *see Martinez-Done*, 2014 WL 5032438, at *3 n.24 (collecting cases); *see also Young v. Aviles*, No. 14 Civ. 9531, 2015 WL 1402311 (S.D.N.Y. Mar. 26, 2015) (Judge Furman); *Romero v. Shanahan*, No. 14 Civ. 6631, 2014 WL 6982937 (S.D.N.Y. Dec. 10, 2014). Five Judges have agreed with Petitioner's interpretation of the word "released," *see Martinez-Done*, 2014 WL 5032438, at *3 n.28 (collecting cases and adopting Petitioner's interpretation); *see also Cruz*, 2015 WL 409225 (Judge Caproni); *Figueroa*, 2015 WL 464168 (Judge Torres), and at least one Judge has agreed with Respondents' interpretation, *see Miller v. Decker*, No. 15 Civ. 471, 2015 WL 1433276, at *1 (S.D.N.Y. Mar. 30, 2015) (Judge Castel).

I agree with the courts that have adopted Petitioner's interpretation of "when." I find that the language of section 236(c) is unambiguous; that "when the alien is released" means "at or

6

around the time of release"; and, accordingly, that the DHS may detain without a bond hearing a non-citizen who has committed certain crimes only if it does so at or around the time the person is released from custody.

Statutory interpretation "begin[s] with the language of the statute"; "[i]f the statutory terms are unambiguous, . . . the statute [is construed] according to the plain meaning of its words." *Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013); *accord Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole."). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987) (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). Where an administrative agency has interpreted the statute in question, "[i]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

*Rodriguez* reasoned, "To read the statute as the government suggests would be to assume that Congress meant to use the word 'after' rather than the word 'when,'" or that Congress intended that the "when . . . released" clause have no meaning at all. *Rodriguez*, 2015 WL 405633, at *7-8. ("The Attorney General shall take into custody any alien [who has been convicted of an enumerated offense] *when* the alien is released . . . ."). A reading of the "when . . . released" clause in the context of the remainder of the provision -- particularly the language "without regard to whether the alien is released on parole, supervised release, or probation" -- does not support Respondents' interpretation. *Id.* at *9-10.

Most convincingly, *Rodriguez* concluded that Respondents' reading of section 236(c) is inconsistent with section 236 as a whole. *Rodriguez* explained:

> Under this detention scheme, there is an irrebuttable presumption that [a] specific subset of non-citizens (who have committed an enumerated offense and been detained "when . . . released" from criminal custody) are categorically dangerous and a flight risk. As a result, their detention is mandatory. For all other non-citizens in removal proceedings, however, the presumption is rebuttable -- and individual bond hearings allow them their opportunity to make their case. . . . When non-citizens . . . are apprehended [] years after their release from criminal custody . . . Congress's presumptions become rebuttable. . . . [A]ny "presumption of dangerousness and flight risk is eroded by the years" the non-citizen "lived peaceably in the community."

*Id.* at *11; *accord Cruz*, 2015 WL 409225, at *6 ("If Congress intended mandatory detention to apply to all aliens who are inadmissible or deportable for the reasons listed in subsection (c)(1)(A)-(D) -- without reference to when they were taken [into] custody -- the statute could easily have said so. As written, the only aliens who are not entitled to a bond hearing under section 1226(a) are those who are taken in to custody immediately after their release from custody."); *Figueroa*, 2015 WL 464168, at *4 ("[A]s the First Circuit recently explained, neither the INA's text, nor structure, nor purpose, nor legislative history, 'suggest that Congress contemplated automatic detention[] being imposed years after an alien's release from custody.'") (quoting *Castañeda v. Souza*, 769 F.3d 32, 43 (1st Cir. 2014)); *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 541 (S.D.N.Y. 2014) ("Since § 1226(a) already authorizes immigration detention, the effect of § 1226(c) is not to give the Attorney General more authority to detain the group of non-citizens described in § 1226(c)(1). Rather, the effect of mandatory detention is to impose a limit on the Attorney General's discretion about whether to detain or release those non-citizens. One must read the statute with that structure in mind."); *Lora v. Shanahan*, 15 F. Supp. 3d 478, 488 (S.D.N.Y. 2014) ("It [] would pervert the statute's plain meaning to interpret the command

to mandatorily detain certain criminal aliens 'when' those aliens are released from state custody to include those aliens who had 'already' been released from state custody." (internal quotation marks omitted)); *Louisaire v. Muller*, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) ("The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses*, even if they are still serving part of their sentence out in the community, under 'parole, supervised release, or probation.'").

For these reasons, the "when . . . released" language in section 236(c) on its face provides that a non-citizen who has committed an enumerated offense shall be detained at or around the time the non-citizen is released from physical custody. As this language is unambiguous, there is no need to consider the BIA's interpretation of the statute.

Accordingly, the portion of the Report inconsistent with this holding is rejected. Here, Petitioner was arrested by ICE approximately 10 years after his most recent criminal arrest and never served a custodial sentence. Petitioner is therefore not subject to mandatory detention under section 236(c) and is entitled to a bond hearing under section 236(a). *See Cruz*, 2015 WL 409225, at *6.

### B.    Due Process

The Report concluded that Petitioner is "detained in violation of his Fifth Amendment right to due process, and granting habeas corpus relief on this claim is warranted." For the following reasons, this portion of the Report is adopted.

The Report properly looked to *Zadvydas v. Davis*, 533 U.S. 678 (2001), and *Demore v. Kim*, 538 U.S. 510 (2003), for guidance. In *Zadvydas*, the Supreme Court addressed the detention of two non-citizens under 8 U.S.C. § 1231 -- the statute governing detention following

a removal order. *Zadvydas,* 533 U.S. at 682-84.  As the Court noted, "When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Id.* at 682.  Should "the Government fail[] to remove the alien during those 90 days," section 1231 "authorizes further detention." *Id.*  Final orders of removal had been issued for each of the petitioners, and the petitioners remained in detention pursuant to section 1231. *Id.* at 684-85.  As the Government faced difficulties identifying countries that would accept the petitioners, it appeared unlikely that either petitioner would be removed from the United States. *Id.* at 684, 686.  Acknowledging that "a statute permitting indefinite detention of an alien would raise a serious constitutional problem," *id.* at 690, the Court held that detention of more than six months is presumptively unreasonable, and following this period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing," *id.* at 701.

Two years later, in *Demore*, the Court addressed the detention of a non-citizen pursuant to section 236(c) -- the statute that governs the mandatory detention of certain non-citizens, even when no removal order has been issued, and the same statute at issue here.  The Court in *Demore* contrasted the potentially indefinite period of detention that the petitioners faced in *Zadvydas* with detention pending a determination of removability under section 236.  Whereas the post-removal-period detention in *Zadvydas* "ha[d] no obvious termination point," the *Demore* Court observed that detention under section 236 "has[] a definite termination point" and "in the majority of cases . . . . removal proceedings are completed in an average time of 47 days and a median of 30 days." *Demore,* 538 U.S. at 529.  In a concurring opinion, Justice Kennedy wrote,

10

"[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.  As the Report properly noted, following *Zadvydas* and *Demore*, courts have read section 236 to authorize a limited period of mandatory detention, after which a detainee is entitled to a bond hearing.  *See Johnson v. Orsino,* 942 F. Supp. 2d 396, 408 (S.D.N.Y. 2013) (collecting cases).

Respondents object to this conclusion on two grounds.  First, they argue that, contrary to the Report's findings, "the mere length of [Petitioner]'s detention, without further inquiry into the reasons for the length of detention, does not establish a due process violation," and that "[t]he Report erred in failing to consider the specific contours of [Petitioner]'s removal proceedings to determine whether continued detention during those proceedings was reasonable."  This argument supports the very conclusion it seeks to rebut.  A bond hearing -- as the Report recommends -- would be the proper forum for "further inquiry into the reasons for the length of detention" and "to determine whether continued detention during [Petitioner]'s proceedings [i]s reasonable."

Second, Respondents argue that the Report erroneously "found that [Petitioner]'s continued detention does not bear a reasonable relationship to the goals of mandatory detention of section 236(c)."  This argument also fails.  As Respondents point out, Congress enacted section 236(c) as a "means of protecting the public from recidivist criminals and ensuring such aliens were actually removed."  As Justice Kennedy noted in his concurrence in *Demore*, "Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate

11

deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore,* 538 U.S. at 532-33. Because Petitioner's detention has exceeded twelve months -- in the absence of any evidence that Petitioner might be a flight risk or a danger to the community -- he is entitled to an individualized bond hearing.

For these reasons, the Report's due process analysis is adopted.

### C. Equal Access to Justice Act Request

The Report further recommends that Petitioner's request for costs and attorneys' fees, pursuant to the EAJA, be denied. Neither party objected to this portion of the Report. Furthermore, the factual and legal bases underlying this portion of the Report are not clearly erroneous or contrary to law. Accordingly, this portion of the Report is adopted.

### IV. CONCLUSION

For the reasons stated above, the Report's conclusion that Petitioner is subject to mandatory detention under section 236(c) is REJECTED. The remainder of the Report is ADOPTED.

Accordingly, the Petition is GRANTED. Within seven calendar days of the date of this Order, Respondents shall provide an individualized bond hearing to Petitioner to determine whether his detention is justified. Should they fail to do so, Respondents shall release Petitioner from detention.

It is further ORDERED that Petitioner's request for costs and attorneys' fees, pursuant to the EAJA, is DENIED.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: June 5, 2015
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE